IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATURAL PRODUCT SOLUTIONS, LLC     \*
        \*
     v.         \*       Civil No. CCB-13-436
        \*
VITAQUEST INTERNATIONAL, LLC, et al.   \*
        \*
        \*\*\*\*\*\*

## MEMORANDUM

Plaintiff Natural Product Solutions, LLC brings this diversity action against defendants Vitaquest International, LLC and Garden State Nutritionals, Inc. in connection with defendants' alleged breach of an agreement to manufacture and distribute certain vitamins and natural supplements. Defendants have moved to dismiss for failure to state a plausible claim. In the event the court denies that motion, defendants seek a more definite statement. The parties have fully briefed the motions, and no hearing is necessary. *See* Local R. 105.6. For the reasons set forth below, the motions will be denied.

## BACKGROUND

According to the complaint, Natural Product Solutions ("NPS") is a Maryland company that researches, develops, manufactures, and distributes various vitamins and natural supplements. One of its products is VirMax, a natural supplement designed to enhance sexual function. Defendants Vitaquest International and Garden State Nutritionals are New Jersey companies that also participate in the vitamin and natural supplement market.

NPS allegedly contracted with defendants to formulate a kosher version of VirMax and to ship that product to certain places, including Israel. In the course of the negotiations that preceded that contract, defendants allegedly represented to NPS that they would engage Windmill Health, a wholly owned subsidiary of Vitaquest, to promote the sale of VirMax in the

1

United States. NPS claims that it attached substantial value to this promise: NPS relied on that commitment when it decided to hire defendants, and, as a result of the promise, it agreed to pay defendants a higher contract price than NPS otherwise was willing to pay.

Soon thereafter the relationship between NPS and defendants soured. According to NPS, defendants failed to comply with NPS's instructions, included incorrect paperwork with VirMax shipments, shipped incorrect quantities of VirMax, and experienced significant production and shipment delays. These issues culminated on September 9, 2012, when defendants claimed to have shipped 137 cartons of VirMax to Israel. As it turned out, thirty-six of those cartons were not VirMax but Pernol, a different product that is not manufactured or marketed by NPS. Israeli customs inspectors detained the shipment because of the incorrect labeling, causing NPS to incur various fees and expenses and leading the Israeli importer and distributor of VirMax to discontinue its relationship with NPS. Defendants apparently acknowledged their error in a letter and claimed it was an "honest mistake."

NPS filed suit against defendants on February 8, 2013. The complaint includes four counts: breach of contract, negligence, fraud in the inducement, and negligent misrepresentation. Defendants then moved to dismiss each count on March 12, 2013, for failure to state a claim upon which this court may grant relief. In the alternative, defendants ask this court to require NPS to submit a more definite statement. NPS opposes each motion.

**STANDARD**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled

allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). The plaintiff's obligation thus is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alterations omitted). It is not sufficient that the well-pled facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## ANALYSIS

### A. Count One: Breach of Contract

Defendants first contend that NPS's breach of contract claim must be dismissed because NPS does not identify the specific provision(s) of the contract that defendants purportedly breached. To establish a *prima facie* claim for breach of contract, a Maryland plaintiff must plead "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *See Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). The plaintiff need not plead facts sufficient to prove each element of the claim. *See Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir. 2005). Rather, the pleading will survive a motion to dismiss if the plaintiff includes "a short and plain statement of the claim showing that

3

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant 'to prepare a defense,' but merely 'whether the document's allegations are detailed and informative enough to enable the defendant to respond.'" *Chao*, 415 F.3d at 349 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1215 (3d ed. 2004)).

NPS's complaint includes sufficient factual allegations to permit defendants to answer. NPS alleges that it contracted with defendants "to formulate, manufacture, and ship a kosher version of VirMax for distribution in Israel," and NPS further alleges that defendants breached the contract when they improperly labeled VirMax shipments, shipped incorrect quantities of VirMax, and shipped another product—presumably Pernol—rather than VirMax. (Compl. §§ 28–29, ECF No. 1.) Defendants may deny that any such contract existed, or they may deny that they breached the terms of the contract, but they cannot reasonably claim that the factual allegations in count one are insufficient to permit them to respond. NPS need not quote specific language from the contract in its complaint and has no obligation to attach to the complaint a copy of the contract.

### B. Counts Two and Four: Negligence and Negligent Misrepresentation

Defendants next argue that NPS has not alleged viable claims for negligence or negligent misrepresentation because NPS has alleged nothing more than breach of contract. Maryland law does not recognize a cause of action for negligence "arising solely from a contractual relationship between two parties." *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 293–94 (4th Cir. 2002) (citing *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)). "This principle is applicable even when the failure to perform the contract results from the defendant's negligence." *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1107 (Md. 1999). Yet this

4

general rule only precludes a negligence action between contracting parties where the contract embodies the entire relationship between the parties. *Lawyers Title Ins. Corp.*, 282 F.3d at 294. "[W]hen an independent duty accompanies a contractual obligation, that independent duty may give rise to a tort action." *Id.* (citing *Jones*, 741 A.2d at 1107; *Heckrotte*, 168 A.2d at 882).

"There is no single principle or simple test for determining when a defendant's breach of a contract will also breach an independent duty and give rise to a tort action." *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1059 (Md. 1999). Whether the relationship between the contractual parties generates potential tort liability will depend on the specific circumstances:

> [W]hen the dispute is over the existence of any valid contractual obligation covering a particular matter, or where the defendant has failed to recognize or undertake any contractual obligation whatsoever, the plaintiff is ordinarily limited to a breach of contract remedy. It is when the defendant has proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care, that the plaintiff may, in some circumstances, maintain a tort action.

*Id.* The nature of the relationship between the parties—and whether the defendant acknowledges the existence of a contractual relationship—therefore is a crucial element in determining whether a tort duty attaches to the defendant's conduct in a particular context. *See Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759–60 (Md. 1986).

In their motion to dismiss, defendants dispute the existence of a contract yet argue that NPS cannot state a viable negligence claim because the parties were engaged in a purely contractual relationship. In light of the uncertainty that clouds the parties' relationship, this court cannot now resolve whether defendants owed NPS a duty of care. The parties must first develop the factual record. In the meantime, NPS is entitled to plead alternative theories of relief. *See* Fed. R. Civ. P. 8(a)(3). The mere allegation of breach of contract is not sufficient to preclude NPS's right to seek damages for allegedly negligent acts, especially where the existence and

scope of the contract are in dispute. Accordingly, the court will withhold judgment on the viability of the two negligence claims until the parties have conducted adequate discovery.

### C. Count Three: Fraudulent Inducement

Defendants also maintain that count three must be dismissed because NPS has not satisfied the heightened pleading standard established for allegations of fraud. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to state with particularity the circumstances constituting fraud. To satisfy this standard, the party alleging fraudulent inducement must plead the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 (2d ed. 1990)). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

NPS has alleged sufficient facts to provide defendants with notice of the particular circumstances of the alleged fraud. According to the complaint, defendants represented to NPS that they would engage Windmill Health, a wholly owned subsidiary of Vitaquest, to promote the sale of VirMax in the United States. NPS alleges that defendants made this representation while the parties were negotiating the terms of the VirMax contract. The purported purpose of the representation was to induce NPS both to sign the contract with defendants and to agree to a higher contract price.[1] NPS does not expressly plead which defendant made the representation,

---

[1] Defendants state in their reply brief that "NPS apparently recognized this deficiency by asserting for the first time in its Opposition papers that Defendants induced NPS into paying a higher contract price for its services than NPS would have paid to utilize another entity's

but because Windmill Health is alleged to be a wholly owned subsidiary of Vitaquest, it is clear from the complaint that Vitaquest made the alleged representation. Accordingly, NPS has adequately stated the circumstances of the alleged fraud, and count three will not be dismissed.

### D. Motion for More Definite Statement

Finally, defendants ask this court to instruct NPS to provide a more definite statement. "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). For the reasons stated above, NPS's complaint is not "so vague or ambiguous" that defendants cannot answer the complaint. The allegations in the complaint are straightforward and provide ample detail to permit defendants to respond. Insofar as defendants dispute the existence of a contract, they may state that denial in their answer and subsequently demand that NPS produce the contract during discovery. They also may depose representatives of NPS with respect to the events described in the complaint, including the alleged fraudulent representations. No more definite statement of the claims, however, is necessary.

### CONCLUSION

For the reasons stated above, the motion to dismiss and motion for more definite statement each will be denied. A separate Order follows.

June 24, 2013 _____/s/_____
Date  Catherine C. Blake
  United States District Judge

---

services in connection with the promotion and distribution of its products." (Reply at 5, ECF No. 11.) Defendants should have read the complaint more carefully: these allegations were first stated in NPS's eight-page complaint. (*See* Compl. ¶¶ 13–14.)